NATHAN GOFF

*v.*

CITY LINES OF WEST VIRGINIA

(No. 9919)

Submitted April 22, 1947. Decided May 20, 1947.

*Guy H. Burnside* and *Cornelius C. Davis,* and *Jed W. Robinson,* for plaintiff in error.

*Steptoe & Johnson, Oscar J. Andre,* and *Edward W. Eardley,* for defendant in error.

RILEY, JUDGE:

This is an action of trespass on the case instituted in the Circuit Court of Harrison County by Nathan Goff against City Lines of West Virginia, a corporation, to recover damages from defendant in the amount of twenty-five hundred dollars for the killing of plaintiff's purebred Clydesdale filly, by one of defendant's interurban electric cars. To a judgment in defendant's favor entered upon a jury verdict directed at the close of the evidence, plaintiff prosecutes this writ of error.

Plaintiff on July 25, 1945, owned a large farm in Harrison County, located about two miles south of the City of Clarksburg, through which extended in a northerly and southerly direction defendant's right of way. About 5:45 on the morning of July 25, an interurban electric car, owned by defendant and operated by one of its employees, while being driven in a southerly direction from Clarksburg to Weston on the part of the right of way extending through defendant's farm, struck and killed the Clydesdale filly described in the declaration and owned by plaintiff. This filly, according to the record, had been kept in a pasture, inclosed by a wire fence fifty-six inches high, adjoining the defendant's right of way. During the night it had escaped from the pasture through a break in the fence, and had strayed on the car track, where it was struck and killed.

From the uncontradicted testimony of the motorman supported by a photograph designated in the record as "Exhibit No. 4," the track makes a curve to the right at the place where the horse was struck, and immediately north of the curve the track is straight for approximately fourteen hundred feet.

Defendant's motorman testified that "It was dark and

foggy. The fog was so thick you could not see through it any distance"; that with the aid of his headlight he could see ahead through the fog from fifteen to twenty feet; and that he was watching the rails as far as he could see ahead. He further testified that a passenger got on the car at a point called "Loveberry," shortly before the car arrived at the curve; that he collected the passenger's fare without diverting his attention from the view ahead; and that immediately thereafter and before the passenger had left the front end of the car, after paying his fare, he saw a horse jump, "maybe two of them"; that he immediately applied the emergency brakes, which automatically caused sand to be spread on the rails; that the rails were slippery; that he first saw the horse as it was coming in a northerly direction inside and near the western rail of the track, when it was approximately fifteen to twenty feet from him; and that because the track curved to the right, the headlight was focused to the left of the position of the horse at the time of or immediately before it was struck. The motorman further testified that when the emergency brakes were applied, the car was being operated at ten to fifteen miles an hour, and when the car, which was sixty feet long, finally came to a stop, it was ten to fifteen feet past the body of the horse, which was lying between the western rail of the track and the wire fence which bordered defendant's right of way on the west. He testified that he then called to plaintiff's farm manager, who was in a white farm house on a hill about four hundred feet from the place where the accident occurred; and that he could "just about see the outline [of the house]; the fence more than you could see the house."

The motorman is corroborated in his testimony by Mr. Woods, the passenger who had boarded the car at Loveberry, who testified that he had not taken his seat when the accident occurred; that the weather was extremely foggy; that the motorman was looking straight ahead; that he saw the horse about fifteen feet from the car just before it was struck; that the motorman immediately applied the brakes and stopped the car with such sudden-

ness that it was necessary for witness to hold to a post near the front of the car to keep from falling. Likewise another passenger on the car, a Mr. Osborn, testified that there was a heavy fog that morning and that it was dark. This witness did not see the horse until after it had been struck, but said he felt the vibration of the car when the motorman brought it to a stop.

There is no substantial contradiction of the foregoing evidence, which embraces the testimony of the only eye-witnesses. Even the testimony of the farm manager corroborates defendant's evidence, at least in part. He testified that the morning was foggy; that, as he came down from the farm house towards the place where the horse was lying, he did not notice whether the headlight on the car was burning; and that, after the filly was struck he observed marks where the animal had come along the berm of the right of way of the track, and also noticed marks about eighteen inches inside the western rail of the track.

From this evidence it clearly appears that plaintiff's horse was killed as the result of having been struck by defendant's car, but the record is devoid of any evidence from which a jury could reasonably have inferred that the filly was killed as the result of the negligence of the motorman in failing to keep a proper lookout, or in failing to bring the car promptly to a stop. In the absence of such evidence, the jury could not have found that defendant was guilty of actionable negligence, and that being so the trial court was justified in directing a verdict for defendant. In this jurisdiction, in an action to recover damages based upon negligence, negligence will not be presumed from the mere proof of the injury, but it must be proved as alleged. *Keyser Canning Co.* v. *Klots Throwing Co.,* 94 W. Va. 346, pt. 3 syl., 118 S. E. 521, 31 A. L. R. 283. And the doctrine of *res ipsa loquitur* is inapplicable here because there are no circumstances in this record from which, without further proof, it can be inferred that "in the ordinary course of events the accident could not have happened except on the theory of negligence." *Hunker* v.

*Warner Bros. Theatres,* 115 W. Va. 641, pt. 1 syl., 177 S. E. 629, 98 A. L. R. 561.

In the circumstances portrayed by this record, we are of the opinion that the trial court committed no error in entering the directed verdict; and therefore his action in that regard is affirmed.

*Affirmed.*